Fuentes v Kwik Realty LLC (2019 NY Slip Op 08643)





Fuentes v Kwik Realty LLC


2019 NY Slip Op 08643


Decided on December 3, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 3, 2019

Sweeny, J.P., Gische, Webber, Moulton, JJ.


9163 450153/14

[*1]Odilson Fuentes, Plaintiff-Respondent,
v
Kwik Realty LLC, Defendant-Appellant.


Horing Welikson & Rosen, P.C., Williston Park (Richard T. Walsh of counsel), for appellant.
Northern Manhattan Improvement Corp. Legal Services, New York (Matthew J. Chachère of counsel), for respondent.



Order, Supreme Court, New York County (Ellen Coin, J.) entered October 19, 2017, amending a prior order, same court and Justice, entered October 17, 2017, which, insofar as appealed from, granted plaintiff partial summary judgment on his claim for rent overcharge, and declared that plaintiff's initial lease was subject to rent stabilization, solely to the extent of referring the matter to a referee or judicial hearing officer to hear and report at the earliest availability, unanimously affirmed, without costs.
Plaintiff, Odilson Fuentes, is the tenant of an apartment in a building located on West 183rd Street in New York, New York, owned by defendant Kwik Realty LLC. The building consists of 48 residential apartments, and is subject to the Rent Stabilization Law.
By lease dated February 15, 2010 for a one-year term from February 1, 2010 to January 31, 2011, plaintiff agreed to pay defendant a preferential rent of $1,300 per month, although the listed unit charge was $2,200 per month. This lease and the later leases were Blumberg form leases that bore the notation "EXEMPT UNIT" in handwriting. The leases contained no references to rent stabilization and no rent stabilization riders were included with the leases.
By lease dated November 10, 2010 for a one-year term from February 1, 2011 to January 31, 2012, plaintiff agreed to pay defendant a preferential rent of $1,350 per month, although the listed unit charge was again $2,200 per month. By yet another lease dated November 28, 2011 for a one-year term from February 1, 2012 to January 31, 2013, plaintiff agreed to pay defendant a preferential rent of $1,400 per month, although this time, the listed unit charge was now $2,500 per month. Finally, by lease dated December 5, 2012 for a one-year term from February 1, 2013 to January 31, 2014, plaintiff agreed to pay defendant a preferential rent of $1,450 per month, although the listed unit charge was $2,600 per month.
On or about December 5, 2013, defendant sent plaintiff a letter stating that his lease would not be renewed and demanding that plaintiff vacate the apartment "due to hazardous conditions." Plaintiff continued to pay his monthly rent of $1,450 to defendant.
Plaintiff commenced this action on January 27, 2014, asserting that defendant illegally deregulated the apartment and overcharged his rent. The complaint sought a declaratory judgment declaring plaintiff to be a rent-stabilized tenant and his prior leases to be illegal and fraudulent, and ordering defendant to offer plaintiff a proper, rent-stabilized lease. Plaintiff also sought declaratory and injunctive relief declaring the legal rent to be the last amount validly registered, $628.34, until defendant registered the apartment with the Division of Housing and Community Renewal (DHCR). Plaintiff also sought money damages and punitive damages for the overcharges, including interest, as well as his attorneys' fees under Real Property Law § 234 and the Rent Stabilization Law and Code.
The motion court properly held that plaintiff was entitled to a rent-stabilized lease. Plaintiff, as the first nonstabilized tenant of the apartment, was entitled to the notices required by RSL § 26-504.2 (b) and RSC § 2522.5(c)(3). Defendant was required to give written notice to the [*2]first tenant of the apartment after the apartment became exempt from rent stabilization, indicating the last regulated rent, the reason that the apartment is no longer subject to rent stabilization, and how the rent amount is computed (RSC § 2522.5[c][1]). Where an owner fails to provide the rent stabilization rider or requested documentation, "the owner shall not be entitled to collect any adjustments in excess of the rent set forth in the prior lease unless the owner can establish that the rent collected was otherwise legal" (RSC § 2522.5[c][3]).
We find that the motion court properly awarded summary judgment to plaintiff as to liability and referred the matter to a referee to hear and report on damages, if any. Rental history may be examined beyond four years to determine rent-stabilized status, as well as for the purpose of calculating an overcharge (Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36)(HSTPA); Dugan v London Terrace Gardens, L.P., 177 AD3d 1, 9 [1st Dept 2019]). Rent overcharge claims are no longer generally subject to a four-year statute of limitations (Rent Stabilization Law § 26—516[a][2]; see also CPLR 213—a). "[B]ecause the legislature has made changes to the law that directly impact this
ase, and has made those changes applicable to this pending litigation, a remand is appropriate" to set forth a methodology for calculating rents and overcharges consistent with the HSTPA (Dugan v London Terrace Gardens, 177 AD3d at 10).
The Decision and Order of this Court entered
herein on July 30, 2019 (174 AD3d 483
[1st Dept 2019]) is hereby recalled and vacated
(see M-7301 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 3, 2019
CLERK